IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

EDWARD AND REIKO SCHWAB, JR.,
ET AL.,

    Plaintiffs,                               CIVIL NO. 2:17cv394

    v.

DAVE HANSEN, ET AL.,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on defendant Frank Gurdziel's Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988(b), ECF No. 20, which he filed after prevailing on his motion to dismiss plaintiffs' Section 1983 action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In support of his motion, Mr. Gurdziel claims that plaintiffs' Section 1983 claim against him, a private citizen, was baseless and harassing. For the reasons stated herein, Mr. Gurdziel's Motion for Attorneys' Fees is **GRANTED**. ECF No. 20.

    I.      **PROCEDURAL BACKGROUND**

On July 26, 2017, Edward and Reiko Schwab, Jr., James and Carol Melvin, Sandra D. Harris, and Michael Aschkenas (collectively, "Plaintiffs") filed the above-captioned action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated Plaintiffs' rights to due process under the Fifth and Fourteenth Amendments in connection with the creation of special taxation district by the City of Virginia Beach between 2011 and 2013. Complaint ("Compl."), ECF No. 1. Three of the four named defendants were employees of the City of Virginia Beach at the time the lawsuit was filed (hereinafter "City Defendants"). Id. ¶¶ 4, 6, 7. The remaining

1

defendant, Mr. Gurdziel, was not an employee of the City of Virginia Beach but was alleged to be the City's "agent" at all times relevant to the complaint. Id. ¶ 5.

On September 1, 2017, the City Defendants, by joint motion, ECF No. 6, and Mr. Gurdziel, by separate motion, ECF No. 3, moved to dismiss Plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Mr. Gurdziel's motion also requested an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b). Id. On November 16, 2017, by written opinion, the Court granted the defendants' motions, in part, and dismissed Plaintiffs' action for lack of subject matter jurisdiction. ECF No. 18. The Court declined to reach the other grounds for dismissal raised in the defendants' motions. Id. at 9. With respect to Mr. Gurdziel's request for attorneys' fees, the Court declined to address such request absent a motion in compliance with Rule 54 of the Federal Rules of Civil Procedure and granted Mr. Gurdziel leave to file such a motion within fourteen days. Id.

On November 29, 2017, Mr. Gurdziel filed the instant Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988(b) along with a supporting memorandum. ECF Nos. 20, 21. In support, he attached the Affidavit of Mr. Gurdziel with several supporting exhibits. ECF No. 21-2. On December 12, 2017, Plaintiffs filed a brief in opposition, which included attorney argument and one unauthenticated email exhibit. ECF No. 22. On December 17, 2017, Mr. Gurdziel filed a reply brief. ECF No. 23.

On February 6, 2018, the Court directed Plaintiffs to supplement their brief in opposition with competent factual evidence. ECF No. 26. Pursuant to such order, on February 20, 2018, Plaintiffs filed a supplemental opposition brief, which included affidavits of three plaintiffs: Mr. Schwab, Mr. Aschkenas, and Ms. Harris. ECF Nos. 27, 27-1, 27-1, 27-3. On March 6, 2018, Mr. Gurdziel filed a rebuttal to Plaintiffs' supplemental opposition. ECF No. 28.

## II. ALLEGATIONS IN PLAINTIFFS' COMPLAINT

A summary of the allegations in Plaintiffs' complaint follows. Beginning in or around July, 2011, Mr. Gurdziel and the City Defendants allegedly "worked together" to create a special taxation district known as a "Special Service District" (hereinafter, "SSD") for waterfront property owners in the Chesopeian Colony subdivision in the City of Virginia Beach ("City"). Compl. ¶¶ 10, 25. The stated purpose of the proposed SSD was to fund a dredging project by levying additional taxes on the waterfront property owners within the SSD who stood to benefit from such project. Id. ¶¶ 11–14. For the proposed SSD to be approved by City Council, "80% of the waterfront property owners in the Chesopeian Colony [subdivision] needed to be in favor of its creation." Id. ¶ 15. Therefore, Mr. Gurdziel and the City Defendants allegedly circulated "willingness petitions" to Plaintiffs and other waterfront property owners in the Chesopeian Colony subdivision to garner support for creating the SSD. Id. ¶ 16.

In May, 2013, when fewer than 80% of such owners approved of the SSD, Mr. Gurdziel and the City Defendants allegedly "conspired to add waterfront property owners from neighboring waterfront communities – and also subtract certain waterfront property owners from the actual Chesopeian Colony – to meet the needed 80% threshold." Id. ¶¶ 17, 19. By the end of June, 2013, Mr. Gurdziel and the City Defendants allegedly had successfully "gerrymander[ed]" the SSD to "surpass[] the required 80% threshold," and the SSD was created. Id. ¶ 22.

Based on the above, Plaintiffs claim that, by "creat[ing] an illegal, non-contiguous SSD without a proper public hearing," the defendants, "individually and collectively, deprived Plaintiffs of their respective rights to Due Process," in violation of 42 U.S.C. § 1983. Id. ¶¶ 23, 26. As the basis for Mr. Gurdziel's liability under Section 1983, the complaint further alleges that, at all relevant times, Mr. Gurdziel was "clothed with the authority of the City of Virginia Beach as its agent in charge of securing citizen approval for the [SSD.]" Id. ¶ 5.

## III. LEGAL STANDARD

"In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Although the statutory provision does not distinguish between prevailing plaintiffs and prevailing defendants, "the Supreme Court ruled that prevailing defendants should receive attorneys' fees only when the plaintiff's claim was 'frivolous, unreasonable, or groundless,' or when 'the plaintiff continued to litigate after it clearly became so.'" Hutchinson v. Staton, 994 F.2d 1076, 1080 (4th Cir. 1993) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1980)). A plaintiff need not have brought the claim in bad faith for a defendant to be awarded fees under this provision. Id.

## IV. DISCUSSION

In his Motion for Attorneys' Fees, Mr. Gurdziel argues that Plaintiffs had no factual basis to claim that he acted as an "agent" of the City or to support any legal theory that might render him, a private citizen, liable under Section 1983. The issue before the Court is whether Plaintiffs' Section 1983 claim against Mr. Gurdziel was "frivolous, unreasonable, or groundless" such that he should be awarded attorneys' fees under 42 U.S.C. § 1988(b).

### A. APPLICABLE LAW

Section 1983 provides redress only for those injuries "fairly attributable to the State." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999) (quoting Lugar v. Edmondsun Oil Co., 457 U.S. 922, 937 (1982)). "The person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." DeBauche, 191 F.3d at 506. "Thus, the Supreme Court has held that private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it into state action: 'Mere approval of or

4

acquiescence in the initiatives of a private party' is insufficient." Id. at 507 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

Applying these principles, the Fourth Circuit has recognized four "exclusive circumstances" under which a private party can be deemed a state actor for purposes of § 1983:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

DeBauche, 191 F.3d at 508 (quoting Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214, 217 (4th Cir. 1993)). "If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state." Id. (citation omitted).

## B.  RELEVANT FACTS BEFORE THE COURT

In his Motion for Attorneys' Fees and supporting affidavit, Mr. Gurdziel states that his interest in a dredging project for Chesopeian Colony began in the early 2000s, when he and five other Chesopeian Colony residents, all of whom desired to improve their waterfront access, volunteered to take on such a project during a Chesopeian Colony Civic League meeting. Gurdziel Affidavit, ECF No. 21-2, ¶ 6. To that end, they formed the Chesopeian Colony Dredging Company ("CCDC"), a private company, and elected Mr. Gurdziel its president in 2003. Id. ¶ 7. When the possibility of a private dredging project was later foreclosed, Mr. Gurdziel and the CCDC explored the possibility of establishing an SSD through the City as a means of funding the project. Id. ¶¶ 8–11. As a result, in or about 2011, the CCDC was ended, and its board members formed the Chesopeian Colony Civic League Dredging Committee ("Dredging Committee") to pursue a SSD for Chesopeian Colony. Id. ¶ 8. Mr. Gurdziel was elected to be such Committee's chairman. Id. Throughout this time, Mr. Gurdziel—first in his

capacity as president of the CCDC, and later as the chairman of the Dredging Committee—routinely drafted and signed newsletters and letters on behalf of the Chesopeian Colony Civic League to inform potentially affected residents about ongoing efforts to create an SSD for dredging. Id. ¶ 13.

On May 12, 2011, at a special meeting of the Chesopeian Colony Civic League, City Defendants Phillip Roehrs and David Hansen presented the City's first proposal for a Chesopeian Colony SSD. Id. ¶ 14. Mr. Gurdziel attended such meeting in his capacity as chairman of the Dredging Committee and was introduced as such to the public in attendance. Id. The City advised that, for City Council to vote on a proposed navigation SSD, at least 80% of the properties therein would need to approve of the project. Id. at Ex. A, 9/9/2011 CCDC Status Update. Therefore, for the next two years, Mr. Gurdziel worked to secure the necessary approvals from Chesopeian Colony residents so that an ordinance creating the SSD could be passed by City Council. Id. ¶ 15. On August 13, 2013, after a public hearing, the City Council passed the ordinance that created the SSD for Chesopeian Colony. Id. ¶ 19.

Mr. Gurdziel avers that, in all his efforts to secure resident approvals and to create the SSD, he was never paid by the City nor was he under its control. Id. ¶ 16. Rather, he claims that he was acting as a private volunteer in his capacity as a civic leader, and that his role was open and apparent to all Chesopeian Colony residents with whom he dealt during that time. Id. ¶¶ 15–16. For example, the transcript of the August 13, 2013 public hearing before the City Council shows that Mr. Gurdziel introduced himself as "Chairman of the Chesopeian Colony Dredging Committee," explained the Dredging Committee's decision to pursue the SSD program in lieu of a private dredging project, and then thanked the City for its assistance. Id. at Ex. C, ECF No. 21-2, at 19–20. Notably, three of the Plaintiffs in this case were present at that public hearing,

including Ms. Harris, Mr. Schwab, and Mr. Aschkenas.[1] Id. at 20, 22, 24.

In their opposition and supplemental opposition briefs, Plaintiffs do not contest that Mr. Gurdziel was a private citizen at all times relevant to their complaint. Nor do they contest that the City Council, not Mr. Gurdziel, set the 80% threshold for SSD approval and ultimately passed the City ordinance that created the SSD at issue here. Rather, Plaintiffs contend that Mr. Gurdziel was intimately involved with and often "directed" City officials in "gerrymandering" the SSD and therefore acted as the City's "de facto agent" during the alleged constitutional violation. ECF No. 22 at 2.

Plaintiffs' primary factual support for this position is their claim that Mr. Gurdziel independently decided which properties to include and exclude from the proposed SSD, and that City officials routinely deferred to his decision. For example, Plaintiff Schwab relies on a June 2016 email chain between Mr. Schwab and City Defendant Roehrs, the Water Resources Engineer for the City. Attachment to Schwab Affidavit, ECF No. 27-1, at 4–7. In his email, Mr. Schwab sought clarity on why his property was scheduled to be removed from the SSD in December, 2016, given that two other properties were already removed from the SSD upon the owners' request. Id. at 5. By email dated June 28, 2016, Mr. Roehrs replied as follows:

> Mr. Schwab,
>
> The two properties were removed at the owners' request, which we agreed with because they physically could not be served by the SSD channels; they are landlocked, had hoped to strike a deal with the adjacent owner that would allow them to be served, but couldn't make it happen. This is not the case for your property, it clearly can be served.
>
> For clarity, and to not let a misstatement go uncorrected, the potential deletions of the eight additional properties, including yours, is not "scheduled" for December. If pressed for a potential date, staff appropriately would guess December as that is

---

[1] The six Plaintiffs in this case include two sets of spouses, representing four properties in total. Therefore, Mr. Schwab, Mr. Aschkenas, and Ms. Harris represent three of the four properties owned by Plaintiffs in this case. See Compl. ¶¶ 4–7.

7

> when we anticipate having permits and advertising the construction contract. If this issue has not changed or been resolved by December it could be an appropriate time to consider requesting the removal ordinance being placed on Council's agenda – but it is incorrect to say it is scheduled, Council agendas are not set until the week in advance of the meeting.
>
> Answers to your queries:
>
> 1) Frank Gurdziel made the request. As we understand it, he was appointed by the civic league board to represent its navigation special service district, and we have worked with him in that role since day one.
>
> 2) He asked that these properties remain in this district to allow an opportunity to resolve the conflict before a permanent removal took place.
>
> 3) The request evolved. There were other locations where similar circumstances existed. We had discussed with Frank the potential course of action of submitting the permit application without including all of the properties in the same circumstance as your cove while leaving the properties in this district to allow the potential for a resolution. The other areas where this circumstance existed were resolved in March or April. Subsequently, Frank confirmed what had already been discussed: that the permit application be finalized and submitted without these eight remaining properties, but that we do not permanently remove these properties at this time for the reason stated in 2).

Id. at 4–5. Mr. Schwab believes that this email shows that "Mr. Gurdziel had a more substantive role in the SSD formation than that of an ordinary citizen." Schwab Affidavit, ECF No. 27-1, ¶ 7. Mr. Schwab further claims that "Mr. Gurdziel was made a partner with the City of Virginia Beach in forming the SSD" and that he "was the central figure in 'gerrymandering' Chesopeian Colony to reach the necessary goal of 80% participation." Id., ¶¶ 5–6.

Similarly, Plaintiff Aschkenas points to a June 2012 email from Mr. Gurdziel to City Defendant Roehrs (with several individuals copied) related to the proposed SSD, which Mr. Roehrs then forwarded to Mr. Aschkenas at Mr. Aschkenas' request. Attachment to Aschkenas Affidavit, ECF No. 27-2, at 4. In the forwarded email, Mr. Gurdziel states:

> We have finalized the list of properties to be included in this project and are ready to proceed with the petition process once the appropriate changes are made to the proposal. The net result of these changes is a project with 133 properties. Based on our survey of the community, over 80% of the 133 have stated their intent to

8

> support the creation of the SSD. This proposal has the support of the Chesopeian
> Colony Civic League board.

Id., 06/07/2012 Email from City Defendant Roehrs to Mr. Aschkenas (forwarding 06/03/2012 email from Mr. Gurdziel to Mr. Roehrs and others). Mr. Gurdziel then details certain properties to be added and deleted from the proposed SSD. Id. Plaintiff Aschkenas believes such email demonstrates that Mr. Gurdziel "acted as . . . supervisor" to City Defendant Roehrs and "directed him to take certain actions" with respect to defining the boundaries of the SSD, and that "Frank Gurdziel, not the City, decide[d] who [was] added or eliminated from the Chesopeian Colony SSD." Aschkenas Affidavit, ECF No. 27-2, ¶ 2. Plaintiff Harris echoes this claim. In her affidavit, she explains that at least three of her neighbors were eliminated from the proposed SSD "at the sole discretion of Frank Gurdziel." Harris Affidavit, ECF No. 27-3, ¶ 4.

### C. MR. GURDZIEL IS ENTITLED TO ATTORNEYS' FEES.

#### 1. Plaintiffs' Section 1983 Claim Against Mr. Gurdziel Was Groundless.

Plaintiffs argue that they had a good faith basis to bring a Section 1983 claim against Mr. Gurdziel, a private citizen, because he "partnered" with, "directed," and made decisions for the City in connection with the creation of the SSD and therefore is liable for state action. The Court disagrees. Upon review of the parties' evidence and submissions, the Court finds that Plaintiffs' claim against Mr. Gurdziel was groundless because none of the four "exclusive circumstances" in which a private citizen may be deemed a state actor under Section 1983 was plausible in this case. Andrews, 998 F.2d at 217.

First, none of Plaintiffs' allegations or evidence suggests that any state actor coerced Mr. Gurdziel to commit an act that would be unconstitutional if done by the state. Assuming without deciding that the creation of the SSD in this case violated Plaintiffs' constitutional rights, Plaintiffs have not presented any evidence that the City officials directed, paid, or controlled Mr.

Gurdziel in connection with his efforts to create the SSD for Chesopeian Colony. In fact, Plaintiffs have admitted that Mr. Gurdziel was working with the City on behalf of the local civic league at all relevant times. See, e.g., Schwab Affidaivt, ECF No. 27-1, ¶¶ 3, 9. Therefore, the first <u>Andrews</u> circumstance is not present.

Second, Plaintiffs have not alleged that any state actor sought to evade a clear constitutional duty by delegating responsibility to Mr. Gurdziel. Nor can the Court reasonably infer the delegation of a constitutional duty from the facts alleged. Therefore, the second <u>Andrews</u> circumstance is not implicated.

Third, Plaintiffs have not shown that any state actor delegated a "traditionally and exclusively public function" to Mr. Gurdziel. It is true that Mr. Gurdziel took many actions that had a public impact, including (1) petitioning City Council for creation of a SSD in Chesopeian Colony; (2) partnering with the City to draft a proposal for same; (3) garnering the support of neighbors to satisfy the City's required 80% threshold; and (4) drawing the boundary lines of the proposed SSD. But none of these actions is "traditionally the exclusive prerogative of the state." <u>DeBauche</u>, 191 F.3d at 508 (quoting <u>United Auto Workers v. Gaston Festivals, Inc.</u>, 43 F.3d 902, 906 (4th Cir. 1995) (citation omitted)). Indeed, the category of "exclusively public functions" is very narrow. <u>Id</u>. It is limited to functions that are "uniquely sovereign in character," such as the administration of elections, the operation of a company town, and peremptory challenges in jury selection. <u>United Auto Workers</u>, 43 F.3d at 907 (collecting cases).

Nonetheless, based on Mr. Gurdziel's "instrumental" role in the creation of the special taxation district, Plaintiffs argue that they "had good cause for alleging that [Mr. Gurdziel] had been delegated the authority (or clothed with the authority) of the City to levy taxes in this matter." ECF No. 22 at 3. But the Court finds no support for this claim. The evidence shows that Mr. Gurdziel and other like-minded residents of Chesopeian Colony sought to avail

themselves of a Virginia state law that authorizes local governing bodies to create a special service district for the provision of certain services and to levy taxes on properties in such district to pay for those services. See Va. Code Ann. § 15.2-2403(1)–(2). It is undisputed that Mr. Gurdziel went to great lengths to garner support for creating a SSD in Chesopeian Colony and to ensure that the proposed SSD met the City's stated requirements. But lobbying for certain tax legislation is not the same as enacting it. See First Nat. Bank of Omaha v. Marquette Nat. Bank of Minneapolis, 636 F.2d 195, 198 (8th Cir. 1980) (citing Weiss v. Willow Tree Civic Ass'n, 467 F. Supp. 803, 810 (S.D.N.Y. 1979) (efforts of an "active civic association" to prevent town government from approving a zoning application did not qualify as state action under Section 1983)). Ultimately, City Council, not Mr. Gurdziel, passed the ordinance that created the SSD and levied the property taxes at issue in this case. Therefore, Plaintiffs' allegation that the City delegated authority to Mr. Gurdziel to "levy taxes" is without basis.

Finally, the fourth Andrews circumstance is not implicated here because Plaintiffs do not allege that the City or any other state actor enforced any rights of Mr. Gurdziel in this case.

Because Mr. Gurdziel's conduct clearly does not fall into one of the four Andrews categories, the Court finds that Plaintiffs' Section 1983 claim against Mr. Gurdziel was groundless under the Christianburg standard for attorneys' fees under 42 U.S.C. § 1988(b).

### 2. Plaintiffs' Section 1983 Claim Against Mr. Gurdziel Was Unreasonable.

The Court also finds that Plaintiffs' claim against Mr. Gurdziel was unreasonable. Plaintiffs and Mr. Gurdziel were neighbors. Plaintiffs knew that Mr. Gurdziel was a private citizen and that he was elected as Chairman of the Chesopeian Colony Civic League's Dredging Committee to represent the majority of residents in the Chesopeian Colony who supported a dredging project. In all relevant correspondence, Mr. Gurdziel was consistently identified as either the president of the CCDC or as Chairman of the Dredging Committee. See, e.g., Gurdziel

11

Affidavit, ECF No. 21-2, at Ex. A; Attachment to Schwab Affidavit, ECF No. 27-1, at 4. Furthermore, several of the Plaintiffs attended City Council meetings as well as the public hearing on August 13, 2013, during which Mr. Gurdziel's private role as a civic leader was obvious and publicized. Therefore, Plaintiffs were not confused or uninformed as to Mr. Gurdziel's role in the SSD project, which might have justified bringing a Section 1983 claim against him.

Moreover, it appears to the Court that Plaintiffs' lawsuit against Mr. Gurdziel was motivated, at least in part, by spite. The evidence shows that Plaintiffs, as part of a small but vocal minority in their neighborhood, strongly disapproved of any dredging project in Chesopeian Colony, including the proposed SSD. Plaintiffs also strongly opposed the procedure by which the SSD proposal was formed. For years they resisted the project and made their objections known, but they were ultimately on the losing side of the dispute. Plaintiffs are now understandably angry that they were included in a taxation district to pay for services that they do not want. They are also understandably angry with Mr. Gurdziel for his "instrumental role" in pursuing the SSD, which Plaintiffs believe undermines their personal and financial interests. But anger, whatever its root, is not license to bring a groundless civil rights action against a private citizen. Therefore, the unreasonable and seemingly vexatious nature of Plaintiffs' claim against Mr. Gurdziel supports imposition of attorneys' fees in this case.

Furthermore, the Court is mindful of the important First Amendment interests at stake here. The Supreme Court has long recognized the First Amendment right to petition one's government. See E. R. R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965).[2] This includes the right of

---

[2] "The Noerr-Pennington doctrine guarantees citizens their First Amendment right to petition the government for redress without fear of antitrust liability." Balt. Scrap Corp. v. David J. Joseph Co., 237

12

the people to "inform their representatives in government of their desires with respect to the passage or enforcement of laws . . .," Noerr, 365 U.S. at 139; "to seek action on laws in the hope they may bring about an advantage to themselves . . .," id.; and to undertake "[j]oint efforts to influence public officials[,]" Pennington, 381 U.S. at 670. Much of Mr. Gurdziel's conduct as alleged in Plaintiffs' complaint involves such protected political activity.

Putting aside the merits of his policy goals, Mr. Gurdziel was a passionate citizen-advocate-turned-civic-leader who represented the interests of like-minded neighbors to pursue a dredging project in their neighborhood. To that end, he petitioned his local government to create a special taxation district for dredging. In pursuit of such project, and in his capacity as chairman of the Dredging Committee, he volunteered countless hours of his time, attended numerous civic league and City hall meetings, drafted community newsletters, and engaged with his neighbors. Such civic involvement, regardless of its desired end, is essential to a healthy democracy. In turn, the free exercise of one's constitutional rights to speech, association, and petition are essential to encourage and protect such civic engagement. For this reason, too, political battles like the one between Plaintiffs and Mr. Gurdziel must be fought in the marketplace of ideas and in the voting booth, not through groundless lawsuits.

When Plaintiffs named Mr. Gurdziel as a defendant in this lawsuit, he was forced to retain counsel at his own expense in order to defend the suit. Gurdziel Affidavit, ECF No. 21-2, ¶ 25. To date, he has incurred thousands of dollars in legal fees and has been unable to obtain reimbursement for such fees from other sources. Id. To the extent other private citizens are

---

F.3d 394, 398 (4th Cir. 2001) (citing Pennington, 381 U.S. 657, and Noerr, 365 U.S. 127). Notably, several circuits have extended this doctrine by recognizing First Amendment immunity as a defense against Section 1983 claims. See, e.g., Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 160–161 (3d Cir. 2001) (collecting cases). However, the Court need not address the doctrine's applicability here because Mr. Gurdziel has not raised the issue in his Motion for Attorneys' Fees, and the Court has already determined that Plaintiffs' Section 1983 claim against Mr. Gurdziel is groundless.

13

aware of his case, such individuals may hesitate to volunteer or engage their local governments in order to avoid risk of similar litigation. For this reason, the Court finds that an award of attorneys' fees in this case is further justified by the need to deter a potential chilling effect on the exercise of First Amendment rights. Cf. DeBauche, 191 F.3d at 511 (finding no abuse of discretion in awarding attorneys' fees to radio broadcaster under Section 1988(b), noting that "groundless lawsuits like [the plaintiff's] might chill broadcasters' and journalists' exercise of their First Amendment rights in organizing political debates).

In summary, the Courts **FINDS** that the groundless and unreasonable nature of Plaintiffs' Section 1983 claim against Mr. Gurdziel, in conjunction with the claim's potential chilling effect on First Amendment rights, warrants an award of attorneys' fees to Mr. Gurdziel as a prevailing defendant under 42 U.S.C. § 1988(b).

### D. DETERMINING MR. GURDZIEL'S FEE AWARD.

In in his Motion for Attorneys' Fees, Mr. Gurdziel seeks an attorneys' fee award of $5,490.00. ECF No. 20. According to the affidavit of his attorney James A. Cales, III ("Cales Affidavit"), this amount reflects 24.4 attorney hours billed at rate of $225.00/hour. Cales Affidavit, ECF No. 21-1, ¶ 3. Of these 24.4 hours, 17.5 hours were billed between August 16, 2017, and November 16, 2017, in connection with Mr. Gurdziel's defense of the suit, and an additional 6.9 hours were billed through November 28, 2017, in connection with Mr. Gurdziel's pursuit of attorneys' fees through the instant motion. Id. ¶¶ 3–5. Mr. Gurdziel's legal bills dated September 15, 2017, and October 13, 2017, are attached as exhibits to the Cales Affidavit. Id., Exs. A, B. Notably, Plaintiffs have not objected to the amount of attorneys' fees requested or to Mr. Gurdziel's supporting documentation for such amount, but they have asserted that their actions were reasonable.

The Court finds that the requested fee award is reasonable. Mr. Cales avers that the attorneys' hourly rate of $225 is customary in the light of the work performed and the experience of counsel. Id. ¶ 6. Furthermore, Mr. Gurdziel's counsel made concerted efforts to reduce the cost of Mr. Gurdziel's motion to dismiss, id. ¶ 7, which made such briefing less costly to Mr. Gurdziel than is customary in this Court. Finally, the attorney hours spent on briefing the instant attorneys' fees motion are lower in appropriate proportion to those fees spent on defending the suit. Therefore, Mr. Gurdziel's requested award of $5,490.00 is reasonable in this case.

On March 6, 2018, in his rebuttal brief, Mr. Gurdziel requested leave of this Court to supplement his fee request to include attorneys' fees that he has incurred since February 6, 2018, as a result of the supplemental briefing schedule imposed by the Court. See Rebuttal Brief in Support of Fee Request, ECF No. 28, at 3 (citing the Court's 2/6/18 Order, ECF No. 26). The Court acknowledges that the briefing schedule was extended through no fault of Mr. Gurdziel. However, the cost to supplement his fee request is likely greater than the additional fees incurred given that Mr. Gurdziel's rebuttal brief was only two-and-half pages. To further increase the cost of litigating the instant attorneys' fees motion is therefore unjustified. For this reason, Mr. Gurdziel's request to supplement his Motion for Attorneys' Fees is denied. ECF No. 28.

### V. CONCLUSION

For the reasons stated above, Defendant Frank Gurdziel's Motion for Attorneys' Fees is hereby **GRANTED**. ECF No. 20. Accordingly, the Court **AWARDS** Mr. Gurdziel $5,490.00 in attorneys' fees to be paid by Plaintiffs. The Clerk is **DIRECTED** to enter judgment accordingly.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED**.

May 25, 2018
Norfolk, VA

/s/
Robert G. Doumar
Senior United States District Judge

15